WATSON, Judge.
Plaintiff, Clara Wesley, filed this suit against defendants, The Walgreen Company, and its liability insurer, The Travelers Insurance Company, to recover damages for personal injuries she sustained when she slipped and fell in a Walgreen’s Store in Alexandria, Louisiana, on December 31, 1974. The trial court awarded damages of $336.00, $300 in general damages and $36 in medical expenses. Plaintiff has appealed, contending that this amount is inadequate. Defendants have not appealed nor answered plaintiff’s appeal and the only issue before this court is whether the award of the trial court constitutes an abuse of its much discretion in fixing damges. LSA-C.C. art. 1934.
*400 Plaintiff contends not only that the general damages are inadequate but also that the trial court erred in not awarding plaintiff :
(1) a $10.00 emergency room charge; and
(2) attorney’s fees and expenses incurred in seeking admissions of facts from defendants under LSA-C.C.P. art. 1514.
FACTS
Plaintiff Wesley, an obese, 38-year-old, widowed housewife with three teenaged children, testified that, after she fell, a Walgreen’s supervisor took her to Dr. Walter Cloud. Dr. Cloud bandaged her left leg and gave her a prescription. Mrs. Wesley then lived with her mother about a week because she could not get around well. Mrs. Wesley testified that she was still having difficulty with pain in her left knee and swelling in her left leg at the time of trial, eight months after her fall. Mrs. Wesley only returned once to Dr. Cloud. On a third occasion, Mrs. Wesley could not contact Dr. Cloud and went to Rapides General Hospital Emergency Room in an effort to see him. She was charged $10.00 for the visit to the emergency room but was not treated. The trial court found that the hospital was not entitled to charge for this visit and denied recovery of the $10.00. During trial, Mrs. Wesley was asked to walk across the courtroom in order that the judge could observe her gait. In reasons for judgment, the trial court stated his impressions:
“There was no noticeable limp or limitation in her walking or evidence of pain or favoring of her allegedly injured knee.” (TR. 43)
Dr. Walter Cloud, an expert medical witness in the field of general practice, testified that he saw Mrs. Wesley in his office on December 31, 1974, and her predominate complaint was pain in her left knee. She had muscle spasm in the left leg. Dr. Cloud diagnosed a muscle sprain after x-rays were negative for fracture. He prescribed Percodan for pain and gave her a Cortisone shot. He saw Mrs. Wesley again on January 2, 1975, when she had complaints of pain in her left knee and low back. On this visit, Mrs. Wesley still had some spasm in her left leg and limitation of motion of the knee joint.
Mrs. Wesley went to the Charity Hospital (the Huey P. Long Memorial Hospital), after her two visits to Dr. Cloud and the unsuccessful attempt to see him.
Mrs. Frances Williams, medical records supervisor at Huey P. Long Memorial Hospital, identified the medical records of Mrs. Wesley at that hospital. These medical records show that Mrs. Wesley went to this hospital on January 9 and January 21, 1975. The x-ray report on the left knee on January 9 was as follows:
“There is an irregular calcified density on the lateral aspect of the knee. This may be osteochondroma or myositis os-scificans . . .” (Pl.Ex. 2)
Osteochondroma is defined in Maloy’s Medical Dictionary for Lawyers, 3rd Ed., as:
“A tumor that is partly bone and partly cartilaginous.” (pg. 536)
The same source defines myositis as “In-flamation of muscles” (pg. 503). Myositis osscificans is defined in the Attorney’s Text-book of Medicine by Gordy-Gray, Vol. I, 3rd Ed., § 2.49(3) as bone information in soft tissues adjacent to bone. The record does not reveal whether this calcification nine days after plaintiff’s injury could have resulted from her fall.
The trial court stated that the hospital records
“ . . .do not indicate that plaintiff suffered any disability from her fall.” (TR. 43)
The trial court held, in a rule hearing prior to trial, that defendants were required *401 to answer requests for admissions submitted by plaintiff under LSA-C.C.P. art. 1496. Defendants did not comply with the judge’s ruling and the court held that their failure resulted in the requested admissions being deemed admitted. The trial court found the admissions sufficient to cover the issue of liability. The wording of LSA-C.C.P. art. 1514 under which plaintiff asks attorney’s fees is as follows:
“Art. 1514. Refusal to admit, expenses
If a party, after being served with a request under Article 1496 to admit the genuineness of any documents or the truth of any matters of fact, serves a sworn denial thereof and if the party requesting the admissions thereafter proves the genuineness of any such document or the truth of any such matter of fact, he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making such proof, including reasonable attorney’s fees. Unless the court finds that there were good reasons for the denial or that the admissions sought were of no substantial importance, the order shall be made.”
CONCLUSION
 The instant situation is not exactly in keeping with the wording of LSA-C.C.P. art. 1514, since defendants did not deny the facts they were requested to admit; rather the facts were deemed admitted because of defendants’ failure to answer. The trial court found that:
“The failure of defendants to file the answers appears to have been genuinely inadvertent and certainly was not intentionally done in contempt of the Court’s ruling.” (TR. 42-43)
LSA-C.C.P. art. 1514 had its source in Federal Rule of Civil Procedure 37(c). Rule 37(c) was amended in 1970 and is now worded differently from the Louisiana article. The reason for the amendment is given in Wright & Miller, Federal Practice and Procedure: Civil § 2290 as follows:
“The 1970 amendments closed an unfortunate loophole that had previously existed in Rule 37(c). Prior to those amendments the rule had applied only if a party had made a sworn denial of a matter he was requested to admit. Literally it had no application if a party stated reasons why he could neither admit nor deny. Although some courts overlooked this point, and others found ways of avoiding it, it was desirable to amend the rule, as was done in 1970, and make it applicable to any failure to admit whether it be by denial or by a statement of inability to admit or deny.81 The sanction of Rule 37(c) does not apply if a party simply does not respond to a request for admissions since this is deemed to be an admission.82 ” (pg. 802)
Thus, the Louisiana rule, which is exactly the same as the Federal rule prior to the 1970 amendment, does not apply literally to a situation where a party neither admits nor denies a request for admissions. The trial court found that defendants here were required to answer but also indicated that the admissions sought related to:
“ . . . controverted issues which go to the heart of the case.” (TR. 46)
See Voison v. Luke, 249 La. 796, 191 So.2d 503 (1966). The Supreme Court there stated that this discovery procedure was not intended to cover legal issues lying at the very heart of a case. The trial court in the instant situation deemed the matters admitted and did not require proof on the issue of liability, but did not apply the further sanction of ordering payment of expenses and attorney’s fees as. in West Kentucky Coal Co. v. Walling, 153 F.2d 582, (Fed.App. 6 Cir. 1946). The trial court’s action was within its discretion.
 No abuse of discretion appears in the trial court’s disallowing the Rapides General Hospital $10.00 charge and no abuse of discretion in the award of general damages of $300.
*402 For the foregoing reasons, the judgment of the trial court herein is affirmed. All costs of this appeal are assessed to' plaintiff-appellant, Clara Wesley.
AFFIRMED.